# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | |
| | No. 18-mc-80-LPS |
| SUSAN M. MATHEWS, | No. 18-mc-153-LPS |
| Debtor. | |

At Wilmington this **17th** day of **October, 2018**:

Pending before the Court in the cases referenced above are First State Trust Company ("First State") and RBC Trust Company (Delaware) Limited's ("RBC" and, collectively, "Petitioners") motions to quash subpoenas issued from the United States Bankruptcy Court for the Southern District of Florida ("Bankruptcy Court"), on behalf of Robert C. Furr ("Furr"), Trustee in the Susan M. Mathews ("Debtor") Chapter 7 bankruptcy case, No. 17-22116-EPK, pending in that court. (No. 18-mc-80-LPS D.I. 4; No. 18-mc-153-LPS D.I. 1)[1] Colin R. Mathews, Brendan R. Mathews, Devin R. Mathews, and Kiernan R. Mathews (collectively, "Mathews Brothers") subsequently filed a motion to intervene under Federal Rule of Civil Procedure 24. (D.I. 10) The Court heard oral argument from all the parties, including the Mathews Brothers, via teleconference. (*See* D.I. 17 ("Tr.")) At the end of the hearing, the Court granted the Matthews Brothers' motion to intervene, found an absence of exceptional circumstances required to transfer the motions to the Bankruptcy Court, and denied Petitioners'

---

[1] The legal issues presented, and their resolution, are identical in each motion. Accordingly, the motions will be addressed together. Unless otherwise noted, citations to the record are to No. 18-mc-80-LPS.

1

requests to shift the costs of production related to the subpoenas and for sanctions. (Tr. at 36-39) The Court also ordered a follow-up joint status report, which the parties provided. (*See* D.I. 15) For the reasons stated below, the Court will grant the motions to quash.[2]

RBC and First State are Delaware trust companies and are former and current trustees, respectively, of The Susan M. Mathews Delaware Trust II ("Trust II"), which is a Qualified Trust under the Delaware Qualified Disposition in Trust Act ("DQDTA"), 12 Del. C. §3570, et seq., formed by Debtor. (No. 18-mc-80-LPS D.I. 4 Ex. A ¶ 4; No. 18-mc-153-LPS D.I. 1 Ex. A ¶ 5) Debtor is one of five beneficiaries and 11 remainder beneficiaries of Trust II. (D.I. 4 ¶ 3) The Mathews Brothers are the other four beneficiaries of Trust II. (D.I. 10 ¶ 3) The Delaware Court of Chancery previously considered certain disputes concerning Trust II, and two other trusts as to which Debtor was grantor, and ruled against certain creditors' claims alleging fraudulent transfers. *See Trustco Bank v. Mathews*, 2015 WL 295373 (Del. Ch. Jan. 22, 2015) ("Chancery Court Decision"). The Delaware Court of Chancery later dismissed with prejudice all claims challenging the trusts. (*See* D.I. 4 Ex. D) In 2017, Debtor filed a voluntary petition for bankruptcy protection under Chapter 7 of Title 11 of the United States Code in the Bankruptcy Court. (D.I. 10 ¶ 5) Later, Furr served a subpoena on each of the Petitioners for a Rule 2004 examination pursuant to the Federal Rules of Bankruptcy Procedure, seeking testimony and production of documents broadly related to all three trusts established by Debtor, including Trust

---

[2]The pending motions to quash relate to a second subpoena. Furr initially served a subpoena to each of the Petitioners (D.I. 1; No. 18-mc-104-LPS D.I. 1), but later withdrew that first subpoena "to avoid litigating technicalities" (D.I. 7 at 2 & n. 1; No. 18-mc-153-LPS D.I. 4 at 2 & n. 1). The Court has already denied as moot RBC's motion to quash the first subpoena. (No. 18-mc-104-LPS D.I. 8) The Court will also deny as moot First State's motion to quash the first subpoena. (D.I. 1)

II.[3] (*See* D.I. 4 Ex. B)

The Court agrees with Petitioners and the Matthews Brothers that the subpoenas should be quashed because they impose an undue burden and expense on them. *See* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."); *see also id.* (d)(3)(A).[4] Ensuring compliance with a subpoena while avoiding the abuses of broad requests lies within the Court's discretion. *See Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*, 2017 WL 1471491, at *2 (M.D. Pa. Apr. 25, 2017); *see also In re SunEdison, Inc.*, 562 B.R. 243, 249 (Bankr. S.D.N.Y. 2017) (noting that scope of discovery under Rule 2004 is discretionary and Court "must balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination").

The subpoena requests here exceed the scope of Rule 2004, which states in relevant part:

(b) Scope of examination

The examination of an entity under this rule or of the debtor under

---

[3] First State is the current trustee of Trust II and its motion refers only to Trust II. But the subpoenas refer to "Trusts" in the plural, defining it to include three trusts, which are also mentioned in the Chancery Court Decision: The Susan M. Mathews Delaware Trust I ("Trust I"), Trust II, and The Susan M. Mathews Delaware Trust III ("Trust III"). (D.I. 4 Ex. B at p. 9 of 10) In its affidavit from its Director of Trust Administration, RBC explains that it served as trustee of both Trust I and Trust III but these trusts are no longer in existence; Trust I was terminated in 2008 and Trust III merged into Trust II and was terminated in 2016. (*See* No. 18-mc-153-LPS D.I. 1 Ex. A ¶¶ 4, 6)

[4] Petitioners agree that the Federal Rule of Civil Procedure 45 is applicable here through Federal Rule of Bankruptcy Procedure 9016. (*See* D.I. 4 ¶ 13; *see also* D.I. 15 at 2 ("At its core, this is a dispute over subpoenas issued under Fed. R. Civ. P. 45 seeking the production of documents from a non-party.")) Under the current verison of Rule 45, "[a] subpoena must issue from the court where the action is pending," which here is the Bankruptcy Court. *In re SBN Fog Cap II LLC*, 562 B.R. 771, 774 (Bankr. D. Colo. 2016); *see also id.* at 776 (collecting cases).

> § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.

Fed. R. Bankr. P. 2004(b). The subpoena here seeks all documents identifying the past and current assets of the trusts; all documents evidencing the acquisition of all assets of the trusts; all documents evidencing all loans and repayment of all loans made by the trusts; all communications between Petitioners and the trusts' Distribution Committee; and, all documents and communications evidencing all distributions by the trusts. (D.I. 4 Ex. B at pp. 9-10) Exercising its discretion and balancing the competing interests of the parties, the Court finds that these sweeping requests for such an extensive examination impose burdens and expense that are not warranted under the circumstances.

Furr argues that Fed. R. Bankr. P. 2004 contemplates inquiry and the production of materials broader than what is permitted in traditional discovery, and insists "the documents requested in the Subpoena are clearly within the broad scope of [Rule 2004]." (D.I. 7 at 4-5) But Furr does not have unlimited power to investigate anything he wishes without articulating a proper basis for the examination. *See In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989) ("While the scope of Rule 2004 examination is very broad, it is not limitless. The examination should not be so broad as to be more disruptive and costly to the party sought to be examined than beneficial to the party seeking discovery.").

Furr has not sufficiently explained how the Rule 2004 investigation relates to the specific documents he seeks, nor how the requested documents relate to any potential claim. In describing the purpose of his investigation, Furr vaguely mentions "bankruptcy discharge issues"

4

but fails to explain how an examination of Trust II relates to such issues. (D.I. 7 at 5) Furr also states that "Debtor, who has never been a resident of Delaware, is not entitled to the protections available under [DQDTA]." (*Id.* at 5 n.4) Even assuming, without deciding, this is true, the subpoenas are not necessary to determine Debtor's residency status, as "Furr already knows Debtor's state of residency." (D.I. 14 ¶ 10) Whether DQDTA provides protection to a Florida resident is a legal issue for the Bankruptcy Court to consider, not a matter giving rise to the need for broad discovery.

The Court further agrees with Petitioners and the Matthews Brothers that the subpoenas seek disclosure of private third-party personal and financial information not related to the bankruptcy case, an additional consideration weighing against their enforcement. *See In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009) ("There are . . . limits to the use of Rule 2004 examinations" and "[i]t may not be used for purposes of abuse or harassment and it cannot stray into matters which are not relevant to the basic inquiry.") (internal quotation marks omitted); *Matter of Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) ("It is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs."). Debtor is only one of five beneficiaries of Trust II, which also has 11 remainder beneficiaries. But the subpoena requests are not limited to Debtor or the bankruptcy case; instead they seek to stray into other matters, including confidential and private information related to other beneficiaries of Trust II, such as the Mathews Brothers. Furr has not identified a meritorious basis to permit such an examination.

5

Accordingly, for the reasons stated above,[5] **IT IS HEREBY ORDERED** that the motions to quash subpoenas (No. 18-mc-80-LPS D.I. 4; No. 18-mc-153-LPS D.I. 1) are **GRANTED**.

**IT IS FURTHER ORDERED** that First State's motion to quash the first subpoena (18-mc-80 D.I. 1) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that, as stated during the teleconference on August 14, the motions to intervene (No. 18-mc-80-LPS D.I. 10; No. 18-mc-153-LPS D.I. 6) are **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to **CLOSE** these cases.

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

---

[5]Given the Court's decision, it is not necessary to reach Petitioners' other bases for quashing the subpoenas. (*See, e.g.*, D.I. 4 ¶¶ 16-19) One or more of them, however, may have merit, including that no viable claim has survived the Court of Chancery ruling, that none of the funds in which Furr is interested is property of the Debtor, and that all the litigation is quickly depleting the value of the Debtor's estate.